UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.

ANGELA CHEW

CASE NO. 6:23-cr-214-GAP-RMN
18 U.S.C. § 371
18 U.S.C. § 201(b)(2)(B)
18 U.S.C. § 1343

## INDICTMENT

The Grand Jury charges:

### COUNT ONE
(Conspiracy to Bribe a Public Official and Wire Fraud)

### A. Introduction

At times relevant to this Indictment:

1. The Small Business Administration (SBA) was an agency of the United States.

2. Community Cultural Consulting LLC and The Perfect Golf Grip LLC were businesses incorporated in the State of Florida, and were owned and controlled by, and associated with, Nabil Dajani.

3. DG3 Network Inc. and Greenberg Media Group, Inc. were businesses incorporated in the State of Florida, and were owned and controlled by, and associated with, Joel Greenberg.

4. DMFT is a business that is incorporated in the State of Florida.

5. RCS is a business that is incorporated in the State of Florida.

6. ANGELA CHEW was a resident of the Middle District of Florida and a "public official" as defined by 18 U.S.C. § 201(a)(1). In or about May 2020, ANGELA CHEW began working for the U.S. Government as an SBA Loan Specialist. As an SBA Loan Specialist, ANGELA CHEW was responsible for processing home and business loans; making recommendations on collateral needed to secure loans; applying accepted financial procedures to analyze financial resources to determine an applicant's ability to repay requested loans; reviewing all pertinent facts needed to make eligibility determinations by analyzing such factors as the nature and cause of damage, intended use of proceeds, legislative and administrative loan limits, and disposition of insurance and other recoveries; ensuring loan files contain all pertinent documentation, to include conversations with applicants and written recommendations or justifications for conclusions; processing loan applications on web-based computer system; and responding orally and in writing to applicants or their representatives. Because of COVID-19, the SBA authorized ANGELA CHEW to work from her residence located in the Middle District of Florida.

7. In response to the COVID-19 pandemic, Congress passed the Coronavirus Aid, Relief, and Economic Security Act, also known as the CARES Act. In conjunction with an officially declared disaster by the United States Government, the CARES Act allowed for the SBA to offer Economic Injury Disaster Loan (EIDL) funding to business owners negatively affected by the COVID-19 pandemic. To qualify, a business had to be in operation prior to February 1, 2020.

8. Using the SBA online portal, EIDL applicants submitted personal and business information in support of each EIDL application, and they did not have to submit supporting documentation of any sort. The application included a jurat-like paragraph where the applicant affirms that the information submitted is true and correct under the penalty of perjury and applicable criminal statutes.

9. The application process for an EIDL involved filling out assorted data fields relating to the size of the affected business entity, the ownership of said business, and other information such as the number of employees and gross business revenues realized in the 12 months prior to the date of the disaster (January 31, 2020). This information furnished by the applicant was then used by SBA application evaluation systems to calculate the principal amount of money the small business was eligible to receive in the form of an EIDL.

10. In addition to applying for an EIDL, an applicant could request and then receive up to $10,000 in an EIDL Cash Advance Grant based on the number of employees claimed. The EIDL Cash Advance Grant was disbursed in amounts of $1,000 per claimed employee. Any EIDL Cash Advance Grant funding that was received by an applicant based on the number of claimed employees did not need to be repaid to the SBA if the loan application was ultimately denied by the SBA, or if the applicant declined the EIDL that was offered by the SBA at a later date.

11. Pursuant to the provisions governing the EIDL program, loan proceeds had to be used by that business on certain permissible expenses. The EIDL (working capital) loans had to be used by the afflicted business to pay fixed debts, payroll,

accounts payable, and other bills that could have been paid had the COVID-19 disaster not occurred.

12. To evaluate EIDL applications, the SBA computer system used automation and system programming to quickly conduct checks of each application submitted by each applicant. The SBA computer system performed checks of the applicant's credit worthiness and evaluated other elements of data furnished by the applicant to identify duplicative applications and indicators of fraudulent activity. The SBA computer system also utilized the information furnished by the applicant to determine the dollar amount of the loan offer that the applicant may be extended, which included gross revenues in the 12-month period prior to the disaster, costs of goods sold during that same timespan, and loss of rental income. If any aspect of the application did not pass the automated evaluation within the SBA computer system, the application's progress was stopped, and an electronic notification was sent to the applicant regarding the potential cause for the application to be halted. The applicant was then given the opportunity to engage with the SBA and request reconsideration of the application.

13. The loan application evaluation system also was designed so that SBA employees, to include SBA Loan Specialists, could affect applications and manually change and override the system's actions if appropriate and necessary.

## B. <u>Conspiracy</u>

14. Beginning at a time unknown to the Grand Jury, but beginning at least by in or about June 2020, and continuing thereafter through and including in or about August 2020, in the Middle District of Florida, and elsewhere, the defendant,

### ANGELA CHEW,

did knowingly and willfully combine, conspire, confederate, and agree with Teresa McIntyre, Nabil Dajani, Joel Greenberg, and other individuals known and unknown to the Grand Jury:

 a. To commit bribery, by being a public official and directly and indirectly corruptly demanding, seeking, receiving, accepting, and agreeing to receive and accept anything of value personally and for any other person, in return for being influenced to commit and aid in committing, and to collude in, and allow, any fraud, and to make opportunity for the commission of any fraud, on the United States, in violation of 18 U.S.C. § 201(b)(2)(B);

 b. To commit wire fraud, by knowingly and with intent to defraud devising and intending to devise a scheme and artifice to defraud, and for obtaining money and property, by means of materially false and fraudulent pretenses, representations and promises, and, for the purpose of executing the aforesaid scheme and artifice to defraud, knowingly transmitting and causing to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, any writings, signs, signals, pictures, and sounds, in violation of 18 U.S.C. § 1343.

## C. Manner and Means

15. The manner and means of the conspiracy included the following:

a. It was part of the conspiracy that ANGELA CHEW, Teresa McIntyre, Nabil Dajani, Joel Greenberg, and other conspirators known and unknown to the Grand Jury would and did unlawfully devise and execute a scheme and artifice to defraud the SBA of money and property by means of materially false and fraudulent pretenses, representations and promises.

b. It was a further part of the conspiracy that ANGELA CHEW, Teresa McIntyre, Nabil Dajani, and Joel Greenberg would and did obtain money, and attempt to obtain money, from the SBA through submission of false applications for EIDLs.

c. It was a further part of the conspiracy that ANGELA CHEW, Teresa McIntyre, Nabil Dajani, and Joel Greenberg would and did prepare and submit applications for EIDLs for businesses that contained false and fraudulent pretenses, representations and promises that related to material facts, including, but not limited to, the following:

(1) False claims that the businesses were in operation prior to February 2020;

(2) False claims as to the revenues that the businesses had earned during the 12-month period prior to the date of the disaster; and,

(3) False claims as to the number of employees employed by the businesses.

6

  d. It was a further part of the conspiracy that Nabil Dajani, Joel Greenberg, and other conspirators known and unknown to the Grand Jury would and did give, offer, and promise to pay money to ANGELA CHEW for her assistance in preparing the applications for EIDLs for their companies and the processing of EIDLs for them.

  e. It was a further part of the conspiracy that ANGELA CHEW would and did demand, seek, receive, accept, and agree to receive and accept money from Nabil Dajani, Joel Greenberg, and other conspirators known and unknown to the Grand Jury to pay her for her assistance in preparing the applications for EIDLs for their businesses and the processing of EIDLs for them.

  f. It was a further part of the conspiracy that ANGELA CHEW and Teresa McIntyre would and did falsely represent that Nabil Dajani and Joel Greenberg had not agreed to pay any fees to anyone for assistance in completing the application.

  g. It was a further part of the conspiracy that Nabil Dajani and Joel Greenberg would and did falsely represent that "Borrower certifies that no fees have been paid, directly or indirectly, to any representative (attorney, accountant, etc.) for services provided or to be provided in connection with applying for or closing this Loan, other than those reported on the Loan Application."

  h. It was a further part of the conspiracy that ANGELA CHEW would and did use her access to the SBA's computer systems and her access to EIDLs to manipulate the status of EIDLs to trigger the system to extend funding for EIDLs

submitted for the benefit of Nabil Dajani, Joel Greenberg and other conspirators known and unknown to the Grand Jury.

  i. It was a further part of the conspiracy that ANGELA CHEW, Nabil Dajani, Joel Greenberg, and other conspirators known and unknown to the Grand Jury would and did use portions of the money that was obtained as a result of devising and executing the conspiracy and scheme and artifice to defraud for their own personal use.

  j. It was a further part of the conspiracy that ANGELA CHEW, Teresa McIntyre, Nabil Dajani, Joel Greenberg, and other conspirators known and unknown to the Grand Jury would and did use interstate wires in furtherance of the conspiracy and scheme and artifice to defraud, including by submitting applications for EIDLs to the SBA, by using interstate wires to receive emails from the SBA, and by using interstate wires to send emails to each other.

  k. It was a further part of the conspiracy that ANGELA CHEW, Teresa McIntyre, Nabil Dajani, and Joel Greenberg, would and did perform acts and make statements to hide and conceal, and cause to be hidden and concealed, the purpose of the scheme to defraud and the acts committed in furtherance thereof.

### D. Overt Acts

16. In furtherance of and to affect the objectives of the conspiracy, the following overt acts, among others, were committed in the Middle District of Florida, and elsewhere:

a. On or about June 19, 2020, ANGELA CHEW and Nabil Dajani talked on the telephone about an EIDL for Nabil Dajani's business, named The Perfect Golf Grip.

b. On or about June 19, 2020, in the Middle District of Florida, ANGELA CHEW caused the submission an application for an EIDL for The Perfect Golf Grip that falsely represented that the business was impacted by COVID-19, that its gross revenues for the 12 months prior to the date of the disaster were $1,728,963, that it had $1,237 in cost of goods sold, that the business's rental property income losses were $23,568, and that it had 12 employees.

c. On or about June 19, 2020, in the Middle District of Florida, Nabil Dajani texted Joel Greenberg to refer him to ANGELA CHEW to obtain a loan from the SBA.

d. On or about June 19, 2020, ANGELA CHEW and Joel Greenberg exchanged text messages about an EIDL for the benefit of Joel Greenberg.

e. On or about June 19, 2020, in the Middle District of Florida, Joel Greenberg sent an email to ANGELA CHEW with a copy of his personal 2018 tax return.

f. On or about June 20, 2020, in the Middle District of Florida, ANGELA CHEW caused the submission of an application for an EIDL for Joel Greenberg that falsely represented that his business was impacted by COVID-19, that his gross revenues for the 12 months prior to the date of the disaster were $161,535, that he had $135 in cost of goods sold, that he lost $135,000 in rents for rental

9

properties, that he had two employees, and that no fees had been charged or agreed upon for completing the application.

   g. On or about June 24, 2020, in the Middle District of Florida, Joel Greenberg executed a Loan Authorization and Agreement that falsely represented that "Borrower will use all the proceeds of this Loan solely as working capital to alleviate economic injury caused by disaster occurring in the month of January 31, 2020 and continuing thereafter," that "[a]ll representations in the Borrower's Loan application (including all supplementary submissions) are true, correct and complete and are offered to induce SBA to make this Loan," and that "Borrower certifies that no fees have been paid, directly or indirectly, to any representative (attorney, accountant, etc.) for services provided or to be provided in connection with applying for or closing this Loan, other than those reported on the Loan Application."

   h. On or about June 27, 2020, in the Middle District of Florida, Nabil Dajani sent a text message to ANGELA CHEW asking her to set up another call with Joel Greenberg about additional applications for EIDLs.

   i. On or about June 28, 2020, Joel Greenberg filed reinstatements for DG3 Network and Greenberg Media Group with the Florida Department of State.

   j. On or about June 29, 2020, Joel Greenberg texted ANGELA CHEW about filing reinstatements for DG3 Network and Greenberg Media Group with the Florida Department of State.

   k. On or about June 28, 2020, ANGELA CHEW submitted an application for an EIDL for DG3 Network that falsely represented that the company

had $475,000 in gross revenue for the 12 months prior to February 1, 2020, that its costs of goods sold during that period was $1,326, that it had two employees, and that no fees had been charged or agreed upon for completing the application.

l. On or about June 28, 2020, ANGELA CHEW submitted an application for an EIDL for Greenberg Media Group that falsely represented that the company earned $718,000 in revenue for the 12 months prior to the disaster, that its costs of goods sold during that period was $1,237, that it employed 10 people, and that no fees had been charged or agreed upon for completing the application.

m. On or about the following dates, each of which constitutes a separate overt act, in the Middle District of Florida, Joel Greenberg wrote checks payable to Nabil Dajani that represented Nabil Dajani's portion of the proceeds from fraudulent applications that had been approved and funded:

-- June 27, 2020, a $6,000 check with a memo line for "loan"

-- July 26, 2020, a $5,000 check with a memo line of "Fee July"

-- July 26, 2020, a $5,000 check with a memo line of "Fee August".

n. On or about July 16, 2020, in the Middle District of Florida, Joel Greenberg paid ANGELA CHEW $3,000 using Cash App.

o. On or about July 17, 2020, in the Middle District of Florida, Joel Greenberg executed a Loan and Authorization Agreement for the EIDL for DG3 Network.

p.  On or about July 17, 2020, in the Middle District of Florida, Joel Greenberg executed a Loan and Authorization Agreement for the EIDL for Greenberg Media Group.

q.  On or about July 20, 2020, in the Middle District of Florida, Nabil Dajani executed a Loan Authorization and Agreement for The Perfect Golf Grip that falsely represented that "Borrower will use all the proceeds of this Loan solely as working capital to alleviate economic injury caused by disaster occurring in the month of January 31, 2020 and continuing thereafter," that "[a]ll representations in the Borrower's Loan application (including all supplementary submissions) are true, correct and complete and are offered to induce SBA to make this Loan," and that "Borrower certifies that no fees have been paid, directly or indirectly, to any representative (attorney, accountant, etc.) for services provided or to be provided in connection with applying for or closing this Loan, other than those reported on the Loan Application."

r.  On or about July 22, 2020, in the Middle District of Florida, Nabil Dajani paid ANGELA CHEW $1,000 using Cash App.

s.  On or about August 4, 2020, ANGELA CHEW caused the submission of an application for an EIDL for Community Cultural Consulting that falsely represented that the company had earned $305,667 in revenue for the 12 months prior to the disaster, that it had no costs of doing business, and that no fees had been charged or agreed upon for completing the application.

t.  On or about August 5, 2020, in the Middle District of Florida, Nabil Dajani executed a Loan Authorization and Agreement for Community Cultural Consulting that falsely represented that "Borrower will use all the proceeds of this Loan solely as working capital to alleviate economic injury caused by disaster occurring in the month of January 31, 2020 and continuing thereafter," that "[a]ll representations in the Borrower's Loan application (including all supplementary submissions) are true, correct and complete and are offered to induce SBA to make this Loan," and that "Borrower certifies that no fees have been paid, directly or indirectly, to any representative (attorney, accountant, etc.) for services provided or to be provided in connection with applying for or closing this Loan, other than those reported on the Loan Application."

u.  On or about September 21, 2020, in the Middle District of Florida, Nabil Dajani paid ANGELA CHEW $1,300 using Cash App.

All in violation of 18 U.S.C. § 371.

## COUNTS TWO THROUGH FOUR
### (Bribery of a Public Official)

1. The allegations contained in paragraphs one through sixteen of Count One of this Indictment are hereby realleged and incorporated herein by reference.

2. On or about the dates set forth below, in the Middle District of Florida, and elsewhere, the defendant,

### ANGELA CHEW,

being a public official, did, directly and indirectly, corruptly demand, seek, receive, accept, and agree to receive and accept anything of value personally and for any other person, in return for being influenced to commit and aid in committing, and to collude in, and allow, any fraud, and to make opportunity for the commission of any fraud, on the United States, as follows:

| Count | Date | Description |
|---|---|---|
| TWO | July 16, 2020 | $3,000 payment by Joel Greenberg to a company controlled by ANGELA CHEW |
| THREE | July 22, 2020 | $1,000 payment by Nabil Dajani to a company controlled by ANGELA CHEW |
| FOUR | September 21, 2020 | $1,300 payment by Nabil Dajani to a company controlled by ANGELA CHEW |

In violation of 18 U.S.C. §§ 201(b)(2)(B) and 2.

## COUNTS FIVE THROUGH ELEVEN
### (Wire Fraud)

### A. Introduction

1.  The allegations contained in paragraphs one through sixteen of Count One of this Indictment are hereby realleged and incorporated herein by reference.

### B. Scheme and Artifice

2.  Beginning on an unknown date, but beginning at least as early as in or about June 2020, and continuing thereafter through and including in or about August 2020, in the Middle District of Florida, and elsewhere, the defendant,

### ANGELA CHEW,

did knowingly, and with intent to defraud, devise and intend to devise, a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises.

### C. Manner and Means of the Scheme

3.  The substance of the scheme and artifice and a number of its manner and means are set forth in paragraphs one through sixteen of Count One of the Indictment, the allegations of which are repeated and realleged as if fully set forth herein.

4.  It was a further part of the scheme and artifice to defraud that Nabil Dajani would and did recruit and refer others to pay ANGELA CHEW to help them with their EIDL loan applications.

5. It was a further part of the scheme and artifice to defraud that ANGELA CHEW would and did use her position at and access to the SBA to misrepresent the nature of at least one applicant's business in the applicant's EIDL application to ensure that the applicant's EIDL application would be approved and funded.

6. It was a further part of the scheme and artifice to defraud that ANGELA CHEW would and did accept payments from other individuals known and unknown to the Grand Jury in return for assisting them with EIDL applications to the SBA, including EIDL applications for DMFT and RCS.

7. It was a further part of the scheme and artifice to defraud that ANGELA CHEW would and did improperly use her position at and access to the SBA to assign some of these loan applications to herself and then approve the applications, including the EIDL applications for DMFT and RCS.

### D. Interstate Wires

8. On or about the dates set forth below, in the Middle District of Florida, and elsewhere, the defendant,

**ANGELA CHEW,**

for the purpose of executing the aforesaid scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations and promises, did knowingly, and with intent to defraud, transmit and cause to be transmitted by means of wire, radio, and television communication in interstate commerce, the following writings, signs, signals, pictures, and sounds:

16

| Count | Date | Interstate Wire |
|---|---|---|
| FIVE | June 19, 2020 | EIDL application for The Perfect Golf Grip |
| SIX | June 20, 2020 | EIDL application for Joel Greenberg |
| SEVEN | June 28, 2020 | EIDL application for DG3 Network |
| EIGHT | June 28, 2020 | EIDL application for Greenberg Media |
| NINE | June 30, 2020 | Funds disbursed for DMFT EIDL |
| TEN | July 17, 2020 | Funds disbursed for RCS EIDL |
| ELEVEN | August 4, 2020 | EIDL application for Community Cultural Consulting |

All in violation of 18 U.S.C. § 1343.

## FORFEITURE

1. The allegations contained in Counts One through Eleven are incorporated by reference for the purpose of alleging forfeiture pursuant to the provisions of 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

2. Upon conviction of a conspiracy to violate 18 U.S.C. §§ 201 or 1343, all in violation of 18 U.S.C. § 371, and/or upon conviction of a substantive violation of 18 U.S.C. §§ 201 or 1343, the defendant shall forfeit to the United States of America, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the violation.

3. If any of the property described above, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

  e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to 18 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c).

A TRUE BILL,



Foreperson

ROGER B. HANDBERG
United States Attorney

By: _____
Amanda S. Daniels
Assistant United States Attorney

By: _____
Chauncey A. Bratt
Assistant United States Attorney
Deputy Chief, Orlando Division

# UNITED STATES DISTRICT COURT
## Middle District of Florida
### Orlando Division

## THE UNITED STATES OF AMERICA

vs.

## ANGELA CHEW

## INDICTMENT

Violation:

18 U.S.C. § 371
18 U.S.C. § 201(b)(2)(B)
18 U.S.C. § 1343

A true bill,

███████████████

Foreperson

Filed in open court this 8th day of November, 2023.

_____
Clerk

Bail $_____